UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN INSTITUTE OF PHYSICS, AND BLACKWELL PUBLISHING, LTD., | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | No. 3:12-CV-01230-M |
| WINSTEAD PC AND JOHN DOES NOS. 1-10, | § § § | |
| *Defendants.* | § § § | |

## MOTION TO DISMISS AND SUPPORTING BRIEF

George M. Kryder
State Bar No. 11742900
Steve R. Borgman
State Bar No. 02670300
Janice Le Ta
State Bar No. 24075138 (*Pro hac vice* application pending)
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975
Telephone: (214) 220-7700
Facsimile: (214) 220-7716

*Attorneys for Defendants Winstead PC and John Does 1-10*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................ iii

SUMMARY ............................................................................................................ 1

ARGUMENT .......................................................................................................... 3

I.      THE COMPLAINT IS SUBJECT TO IMMEDIATE DISMISSAL ................................. 3

II.     LAWYERS HAVE A PROTECTED FAIR-USE RIGHT AND LEGAL DUTY TO SUBMIT TO THE UNITED STATES PATENT AND TRADEMARK OFFICE COPYRIGHTED NON-PATENT LITERATURE THAT MAY BE "MATERIAL TO PATENTABILITY" IN CONNECTION WITH A PATENT APPLICATION .......... 4

       A.     Lawyers Have A Legal Duty of Disclosure to the PTO.......................................... 4

       B.     The PTO Agrees That Fair Use Applies When Lawyers Submit a Copyrighted Article As a Prior Art Reference Under the Duty of Disclosure.................................. 5

       C.     Winstead's Submission to the PTO Constitutes Fair Use As a Matter of Law....... 6

            1.     The Purpose and Character of Submitting Prior Art References to the PTO Supports Finding Fair Use ................................................... 7

                  a.     The Quasi-Judicial Nature of PTO Patent Proceedings Weighs Heavily in Favor of Fair Use............................................. 7

                  b.     The Transformative Nature of Submitting NPL Weighs Heavily in Favor of Fair Use........................................................ 8

                  c.     Submitting NPL Is Not a "Commercial Use" or "Exploitation" and Thus Is Fair Use. .......................................... 10

            2.     The Factual and Evidentiary Nature of the Published Articles Also Supports Finding Fair Use....................................................... 11

            3.     The Amount and Substantiality of Copying Is Neutral............................ 12

            4.     Winstead's Alleged Actions Had No Effect on the Market Value for the Articles.............................................................................. 13

       D.     Providing Non-Patent Literature to the PTO Is Not a "Public" "Distribution" Protected by Copyright Law, Regardless of the Fair-Use Analysis..................... 13

       E.     Submitting Non-Patent Literature to the PTO is Not Actionable Under the *Noerr-Pennington* Doctrine........................................................................ 14

III.    LAWYERS HAVE A PROTECTED FAIR-USE RIGHT AND LEGAL DUTY TO KEEP CLIENT-FILE COPIES OF ANY COPYRIGHTED ARTICLES SUBMITTED TO THE PTO, BUT IN ANY EVENT, SUCH COPIES ARE NOT AN ACTIONABLE PUBLIC DISTRIBUTION UNDER 17 U.S.C. § 106(3), AS A MATTER OF LAW ................................................................................................. 15

       A.     Lawyers Have A Legal Duty to Maintain Client Files, Including Copies of Submissions to the PTO ............................................................................... 16

    1. The Purpose and Character of the Use for the Client File Supports Finding Fair Use............................................................................18

    2. The Factual and Evidentiary Nature of the Published Articles Supports Finding Fair Use.............................................................18

    3. The Amount and Substantiality of Copying Is Neutral............................18

    4. Winstead's Alleged Actions Had No Effect on the Market Value for the Articles.................................................................................19

  B. Allegedly Keeping Copies of any Articles in Client Files Is Not a "Public" "Distribution" Protected by Copyright Law, Regardless of the Fair-Use Analysis............................................................................................19

IV. PLAINTIFFS' UNSUPPORTED THEORY OF COPYRIGHT LIABILITY WILL HARM THE PATENT AND JUDICIAL SYSTEMS .................................................20

V. ALTERNATIVELY, THE COMPLAINT DOES NOT MEET MINIMAL PLEADING REQUIREMENTS AND MUST BE DISMISSED ...................................22

VI. CONCLUSION ..............................................................................................23

CERTIFICATE OF SERVICE................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*A.V. ex rel. Vanderhye v. iParadigms, LLC,*
  562 F.3d 630 (4th Cir. 2009) .................................................................. 9

*Acoustic Sys., Inc. v. Wenger Corp.,*
  207 F.3d 287 (5th Cir. 2000) ................................................................ 14

*American Institute of Physics v. Schwegman Lundberg & Woessner, P.A.,*
  No. 0:12-cv-00528 (D. Minn. Feb. 29, 2012) ..................................... 21

*Arista Records LLC v. Greubel,*
  453 F. Supp. 2d 961 (N.D. Tex. 2006) ................................................ 14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................. 3

*Aventis Pharma, S.A. v. Hospira, Inc.,*
  675 F.3d 1324 (Fed. Cir. 2012) ............................................................ 5

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 S.Ct. 1955 (2007) ..................................................... 3, 22

*Berkla v. Corel Corp.,*
  66 F. Supp. 2d 1129 (E.D. Cal. 1999) .................................................. 8

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
  448 F.3d 605 (2d Cir. 2006) .................................................................. 9

*Bond v. Blum,*
  317 F.3d 385 (4th Cir. 2003) ................................................................ 8

*Brownmark Films, LLC v. Comedy Partners,*
  800 F. Supp. 2d 991 (E.D. Wis. 2011) .............................................. 3, 6

*Butterworth v. United States,*
  112 U.S. 50 (1884) ............................................................................... 7

*Campbell v. Acuff–Rose Music, Inc.,*
  510 U.S. 569 (1994) ............................................................. 6, 8, 10, 11

*Cardtoons, L.C. v. Major League Baseball Players Ass'n,*
  208 F.3d 885 (10th Cir. 2000) ............................................................ 15

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.,*
  536 F.3d 121 (2d Cir. 2008) ................................................................ 14

*Coastal States Mktg., Inc. v. Hunt,*
  694 F.2d 1358 (5th Cir. 1983) ............................................................ 15

*DSC Comm'ns Corp. v. DGI Techs., Inc.,*
  898 F.Supp. 1183 (N.D. Tex. 1995) ................................................... 11

*Field v. Google Inc.,*
  412 F. Supp. 2d 1106 (D. Nev. 2006) ................................................ 12

*Harper & Row Publishers., Inc. v. Nation Enters.,*
  471 U.S. 539 (1985) .............................................................. 11, 14, 19

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey,*
  497 F. Supp. 2d 627 (E.D. Pa. 2007) .............................................. 8, 18

*Jartech, Inc. v. Clancy,*
  666 F.2d 403 (9th Cir. 1982) ................................................................ 8

*John Wiley & Sons v. Hovey Williams LLP,*
  No. 5:12-cv-04041 (D. Kan. Apr. 20, 2012) .................................................. 21

*John Wiley & Sons v. McDonnell Boehnen Hulbert & Berghoff,*
  No. 1:12-cv-01446 (N.D. Ill. Feb. 29, 2012) ................................................ 21

*Jones v. Bock,*
  549 U.S 199 (2007) ......................................................................................... 3

*Markman v. Westview Instruments*
  52 F.3d 967 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996) ....................... 7, 14

*Maxtone-Graham v. Burtschaell,*
  803 F.2d 1253 (2d Cir. 1986) ....................................................................... 12

*Overland Motor Co. v. Packard Motor Co.,*
  274 U.S. 417 (1927) ........................................................................................ 7

*Perfect 10, Inc. v. Amazon.com, Inc.,*
  508 F.3d 1146 (9th Cir. 2007) ........................................................................ 9

*Pieczenik v. Bayer Corp.,*
  No. 2011-1385, 2012 WL 1177925 ................................................................ 3

*Publs., Inc. v. Nation Enters,*
  471 U.S. 539 (1985) ...................................................................................... 14

*Religious Tech. Ctr. v. Wollersheim,*
  971 F.2d 364 (9th Cir. 1992) ........................................................................... 8

*Resolution Trust Co. v. H__, P.C.,*
  128 F.R.D. 647 (N.D. Tex. 1989) ................................................................. 16

*Righthaven LLC v. Realty One Group, Inc.*
  No. 2:10-cv-01036, 2010 WL 4115413 (D. Nev. Oct. 19, 2010) .................. 3

*Shell v. DeVries,*
  No. 07-1086, 2007 WL 4269047 (10th Cir. Dec. 6, 2007) ............................ 3

*Sony Corp. of Am. v. Universal Studios, Inc.,*
  464 U.S. 417 (1984) ...................................................................................... 12

*Stockwell v. Kanan,*
  442 F. App'x 911 (5th Cir. 2011) ................................................................... 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007) ........................................................................................ 3

*Therasense, Inc. v. Becton, Dickinson & Co.,*
  649 F. 3d 1276 (Fed. Cir. 2011) ..................................................................... 5

*Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.,*
  626 F.2d 1171 (5th Cir. 1980) ................................................................. 10, 13

*United States v. Am. Bell Tel. Co.,*
  128 U.S. 315 (1888) ........................................................................................ 7

*Video Int'l. Prod., Inc. v. Warner-Amex Cable Comm.,*
  858 F.2d 1075 (5th Cir. 1988) ...................................................................... 15

*Warner Bros. Ent. Inc. v. RDR Books,*
  575 F. Supp. 2d 513 (S.D.N.Y. 2008) ............................................................ 9

## Statutes

17 U.S.C. § 106 ..................................................................................................... 20

17 U.S.C. § 107 ....................................................................................................... 6

17 U.S.C. § 201(d)(2) ................................................................................................. 20
17 U.S.C. § 505 .................................................................................................... 2, 22
17 U.S.C. § 507(b) ............................................................................................... 2, 16
35 U.S.C. § 1 ............................................................................................................ 4
35 U.S.C. § 2 ............................................................................................................ 4

## Other Authorities

H.R. 1249 § 10(b) ................................................................................................... 21
H.R. Rep. No. 94-1476, at 65 (1976) ........................................................................ 7
U.S. Const. art. I, § 8, cl. 8. ..................................................................................... 4

## Rules

FED. R. CIV. P. 8(a) ................................................................................................... 4
FED. R. EVID. 201 .............................................................................................. passim
TEX. DISCIPLINARY R. OF PROFESSIONAL CONDUCT 1.01 ......................................... 17
TEX. DISCIPLINARY R. OF PROFESSIONAL CONDUCT 1.14(a) ..................................... 16

## Regulations

37 C.F.R § 1.4(a)(2) ................................................................................................ 17
37 C.F.R § 1.4(d)(1)(ii) ........................................................................................... 16
37 C.F.R. § 1.56(a) ............................................................................................ 4, 10
37 C.F.R. § 1.97 ....................................................................................................... 4
37 C.F.R. § 1.98(a)(2)(ii) .......................................................................................... 4
37 C.F.R. § 10.2(a) ................................................................................................... 5
37 C.F.R. § 10.2(c)(10) ............................................................................................ 5
37 C.F.R. § 10.18(a) ............................................................................................... 17
37 CFR § 10.57 ...................................................................................................... 19

## MOTION TO DISMISS AND SUPPORTING BRIEF

To The Honorable United States District Court:

Defendants WINSTEAD PC and John Does Nos. 1-10 (collectively "Winstead") respectfully move to dismiss the complaint for failure to state a claim – as a matter of law – and alternatively, for failure to plead purported copyright infringement beyond deficient conclusory assertions in the same generic complaint filed against multiple law firms across the country.

### SUMMARY

Lawyers have a protected fair-use right and legal duty to submit to the United States Patent and Trademark Office ("PTO") copyrighted material – such as scientific journals called "non-patent literature" ("NPL") – that may be "material to patentability" in connection with prosecuting patent applications before the PTO. Thus, Winstead's alleged copying and submission of two copyrighted NPL articles to the PTO pursuant to legal requirements cannot be copyright infringement – as a matter of law. No court has held otherwise and the PTO has issued a memorandum confirming that such submissions are fair use.

Winstead also cannot be liable – as a matter of law – for allegedly keeping client-file copies of any copyrighted NPL articles submitted to the PTO – which lawyers have a protected fair use right and legal duty to their clients and the PTO to do.

Further, neither submitting NPL to the PTO or allegedly keeping copies of any articles in client files is actionable – as a matter of law – because only a *public* distribution falls within the exclusive rights of a copyright owner under the Copyright Act. 17 U.S.C. § 106(3). As a matter of law, providing NPL to the PTO or keeping a copy in a lawyer's client file is not an actionable distribution, so Winstead cannot be liable for infringement.

Additionally, although a matter of first impression, the *Noerr-Pennington* doctrine protects lawyers' right to petition the government by submitting NPL in connection with filing

and prosecuting a patent application.  Thus – as a matter of law – submitting NPL to the PTO is not actionable.

Beyond, these legal defects that require the Complaint to be dismissed, its contents do not meet even minimal pleading standards and demonstrate that Plaintiffs cannot prevail under any plausible set of facts.  In conceding that the sparse and conclusory allegations are based on nothing more than "information and belief" and require discovery as a fishing expedition to find a claim (Complaint ¶ 15), Plaintiffs have failed to plead sufficient facts beyond formulaic labels and conclusions that require dismissal.  Even a cursory glance at the approved form of copyright infringement complaint – Form 19 attached to the Federal Rules of Civil Procedure – shows that this Complaint does not meet minimal requirements and must be dismissed.

Moreover, it is troubling that one of the plaintiffs – Blackwell Publishing, Ltd. ("Blackwell") – does not even own one of the copyrights in question.[1]  And as to the other copyright allegedly owned by American Institute of Physics, Winstead could find only one patent application in which this article was submitted to the PTO.  Even a quick review of the PTO's website for this application shows that the NPL reference was submitted to the PTO in 2005 and the patent application was *transferred* in 2007 from Winstead to another law firm.[2]  Thus, any copyright claim as to this second article is barred by the three-year statute of

---

[1] Although Blackwell represents that it owns the copyright for "Enhanced germicidal effects of pulsed UV-LED irradiation on biofilms," the Copyright Office record attached as Exhibit 1 to the Appendix in Support of Motion to Dismiss ("APP.") identifies John Wiley & Sons Ltd. as the copyright claimant.  APP. Ex. 1.  Winstead respectfully requests the Court to take judicial notice of APP. Ex. 1 under FED. R. EVID. 201.  Thus, Blackwell apparently lacks standing and its purported claims should be dismissed.

[2] *See* APP. Ex. 2, U.S. Pat. No. 7,597,788 (issued Oct. 6, 2009); APP. Ex. 3, application 11/185,475 (filed July 20, 2005 and published April 19, 2007); APP. Ex. 4, Winstead power of attorney revoked (June 12, 2007).  Winstead respectfully requests the Court to take judicial notice of APP. Ex. 2-4 under FED. R. EVID. 201.

limitations.  17 U.S.C. § 507(b). [3]

Because Plaintiff ultimately cannot meet its pleading standards in law or fact, the Complaint must be dismissed with prejudice and Winstead should recover its attorneys' fees and costs, as authorized by 17 U.S.C. § 505.

## ARGUMENT

## I.   THE COMPLAINT IS SUBJECT TO IMMEDIATE DISMISSAL

A complaint is "subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S 199, 215 (2007).  A court also may rely on "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" in deciding whether a complaint fails to state a claim upon which relief may be granted.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).  Courts routinely dispose of fair-use cases based on Rule 12 motions.[4]

Further, the Complaint includes unsupported and speculative allegations, thus failing to meet the *Iqbal* standard that "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal* at 678 (quoting *Twombly*, 550 U.S. at 557).  Thus, "'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not show[n],'" for Rule 8(a) purposes, "'that the

---

[3] "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).

[4] *See Brownmark Films, LLC v. Comedy Partners*, 800 F. Supp. 2d 991, 997–1002 (E.D. Wis. 2011)  (looking beyond the complaint to resolve the fair use question on a motion to dismiss); *see also Pieczenik v. Bayer Corp.*, No. 2011-1385, 2012 WL 1177925 (Fed. Cir. March 22, 2012) (non-precedential) (affirming motion to dismiss on fair use grounds); *Shell v. DeVries*, No. 07-1086, 2007 WL 4269047 (10th Cir. Dec. 6, 2007) (non-precedential) (affirming motion to dismiss on fair use grounds); *Righthaven LLC v. Realty One Group, Inc.*, No. 2:10-cv-01036, 2010 WL 4115413 (D. Nev. Oct. 19, 2010) (finding fair use on motion to dismiss).

pleader is entitled to relief,'" and dismissal is warranted. *Stockwell v. Kanan*, 442 F. App'x 911,

913 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); FED. R. CIV. P. 8(a).

## II.   LAWYERS HAVE A PROTECTED FAIR-USE RIGHT AND LEGAL DUTY TO SUBMIT TO THE UNITED STATES PATENT AND TRADEMARK OFFICE COPYRIGHTED NON-PATENT LITERATURE THAT MAY BE "MATERIAL TO PATENTABILITY" IN CONNECTION WITH A PATENT APPLICATION

### A.   Lawyers Have A Legal Duty of Disclosure to the PTO

Under its constitutional directive,[5] Congress created the PTO to examine patent

applications. 35 U.S.C. § 1 & 2. The PTO imposes a duty of disclosure on those seeking patents

for their inventions, under 37 C.F.R. § 1.56(a):

> A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.

This duty of disclosure falls on a number of people, including inventors, patent attorneys,

and others pursuing patent protection. *Id.* Under this duty, patent lawyers typically file

"Information Disclosure Statements" ("IDSs"), providing the PTO with (among other things)

copies of patents and articles that are relevant to the patent application. *See* 37 C.F.R. §§ 1.97 &

1.98(a)(2)(ii). Such mandatory disclosures often include copyrighted articles submitted as

factual evidence of the content of the "prior art" relevant to the invention. Such prior art is

important because it allows the PTO to determine whether the invention is entitled to a patent.

The PTO requires each individual involved in filing a patent application to submit all

NPL that might be "material to patentability." *See* 37 C.F.R. § 1.56(a). The failure to disclose

---

[5] The Constitution authorizes Congress "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8.

pertinent prior art in breach of the duty of candor may subject a prosecuting attorney to charges of inequitable conduct and cause the patent to be unenforceable.[6] Prudent practice in the face of such severe consequences clearly required Winstead to copy and submit articles to the PTO.

Further, the PTO publishes the Manual of Patent Examining Procedure ("MPEP") to provide patent examiners, patent attorneys, patent applicants, and others with a reference guide and rules of practice and procedures relevant to prosecuting patent applications and submitting prior art, including NPL.  PTO, MANUAL OF PATENT EXAMINING PROCEDURE §§ 1.4 (8th ed. 2010).  The MPEP includes an entire chapter devoted to the duty of disclosure.  *Id.* § 2000.  The MPEP also addresses the duty of disclosure elsewhere, such as when discussing Information Disclosure Statements provided to comply with the duty of disclosure.  *Id.* § 609.

**B.     The PTO Agrees That Fair Use Applies When Lawyers Submit a Copyrighted Article As a Prior Art Reference Under the Duty of Disclosure**

A January 19, 2012, memorandum from the PTO's general counsel opines that lawyers' copying and submitting NPL under the PTO's disclosure requirements is protected by the fair use doctrine because: (1) applicants and their lawyers have a legal duty to submit such copyrighted NPL to the PTO; (2) although the applicant or law firm submitting the prior art might be a for-profit entity, the submission to the PTO is not a "commercial use" or "exploiting" the copyrighted work because it is made pursuant to a legal requirement based on its factual, rather than expressive, content; (3) the submission to the PTO should be considered "transformative" because it is used for a new and different purpose than for which is was created; for example, to demonstrate for purposes of patent prosecution or examination that certain

---

[6] *See, e.g., Aventis Pharma, S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1336 (Fed. Cir. 2012) (holding that a patentee's failure to notify the PTO of a known reference that impacts patentability is inequitable conduct that renders a patent unenforceable); *see generally Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F. 3d 1276 (Fed. Cir. 2011); *see also* 37 C.F.R. §§ 10.2(a) & (c)(10) (stating that the knowing violation of the duty to disclose constitutes "gross misconduct").

features of applicants' claims already are in the prior art or are obvious; and (4) there is no basis

for concluding that applicants' submission of NPL has any significant negative impact on the

market for the material, including among various reasons, because it usually has limited

commercial value and copies of NPL that law firms typically submit have been obtained through

legitimate, licensed databases and thus already have been paid for once.[7]

### C.    Winstead's Submission to the PTO Constitutes Fair Use As a Matter of Law

The fair use doctrine provides that "the fair use of a copyrighted work . . . for purposes

such as criticism, comment, [or] news reporting . . . is not an infringement of copyright." 17

U.S.C. § 107.  In analyzing fair use, courts consider four statutory factors: "(1) the purpose and

character of the use, including whether such use is of a commercial nature or is for nonprofit

educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of

the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon

the potential market for or value of the copyrighted work."  *Id.*  All of these factors should be

explored "and the results weighed together, in light of the purposes of copyright." *Campbell v.*

*Acuff–Rose Music, Inc.,* 510 U.S. 569, 578 (1994).

In determining whether fair use applies in this case, "context is king." *Brownmark Films,*

800 F. Supp. 2d at 998 (dismissing copyright complaint on fair use grounds).  Here, the copying

and submission of a prior art reference to the PTO in connection with prosecuting a patent

application constitutes fair use – as a matter of law.

---

[7] *USPTO Position on Fair Use of Copies of NPL Made in Patent Examination*, Bernard J. Knight, Jr., General Counsel (Jan. 19, 2012) ("PTO Opinion"), APP. Ex. 5.  The PTO Opinion took no position concerning copies in client files.  Winstead respectfully requests the Court to take judicial notice of APP. Ex. 5 under FED. R. EVID. 201. Such definitive pronouncements by the PTO are entitled to deference and support a finding of fair use here.  Further, the PTO Opinion notes that the PTO itself independently provides copies of copyrighted NPL to applicants and their lawyers in the course of patent prosecution and makes available to the public for a fee copies of copyrighted NPL included in the official file wrapper.  PTO Opinion at 5-6.  Simply put, anyone can obtain copies of the two articles in question directly from the PTO without infringing any copyright.  No court has found such activities to be copyright infringement.  This further confirms, as a matter of law, that the submission of NPL to the PTO constitutes fair use.

1.     **The Purpose and Character of Submitting Prior Art References to the PTO Supports Finding Fair Use**

    a.    **The Quasi-Judicial Nature of PTO Patent Proceedings Weighs Heavily in Favor of Fair Use**

Although the PTO is not a judicial body, the "proceedings of the Patent Office . . . are so nearly akin to judicial proceedings [that they are] most appropriately designated as quasi-judicial."[8] The use of copyrighted articles as "*evidence*" of the prior art serves the same function as using copyrighted evidence in judicial proceedings – such materials serve a documentary and evidentiary function, and are used by attorneys to advocate their clients' positions.

Importantly, the legislative history of the Copyright Act of 1976 shows that Congress considered the use of copyrighted materials in judicial proceedings to be fair use.[9] The leading treatise on copyright law explains the application of fair use in the context of judicial proceedings as follows:

> [R]eproduction of a work in connection with a judicial proceeding, even where the reproduction is of the work in its entirety, serves a qualitatively different function, and does not satisfy the reader demand for the original. . . . Works are customarily reproduced in various types of judicial proceedings . . . to say nothing of copyright infringement actions, and *it seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties responsible for offering the work in evidence.*

---

[8] *Overland Motor Co. v. Packard Motor Co.*, 274 U.S. 417, 421 (1927) (quoting *In re Barratt's Appeal*, 14 App. D.C. 255, 1899 WL 16318, at *2 (1899); *see also Butterworth v. United States*, 112 U.S. 50, 67 (1884) ("That it was intended that the Commissioner of Patents, in issuing or withholding patents . . . should exercise quasi-judicial functions, is apparent from the nature of the examinations and decision he is required to make."); *United States v. Am. Bell Tel. Co.*, 128 U.S. 315, 363 (1888) ("The patent . . . is the result of a course of proceeding, quasi-judicial in its character."). *See Markman v. Westview Instruments,* 52 F.3d 967, 986 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996) ("Patent applications, unlike contracts, are reviewed by patent examiners, quasi-judicial officials trained in the law.").

[9] *See* H.R. Rep. No. 94-1476, at 65 (1976) ("The [following] examples . . . while by no means exhaustive, give some idea of . . . [what] courts might regard as fair use under the circumstances: . . . reproduction of a work in legislative or judicial proceedings or reports. . . ."). *see also* Pamela Samuelson, *Unbundling Fair Uses*, 77 FORDHAM L. REV. 2537, 2592–2597 (2008).

4 NIMMER ON COPYRIGHT, § 13.05[D][2], 13-230.14 (citations omitted) (emphasis added). Courts dealing with the use of copyrighted works in the context of judicial proceedings have overwhelmingly found that the first factor favors fair use.[10]

For purposes of fair use, no reason exists to distinguish judicial proceedings from quasi-judicial PTO proceedings. Given the quasi-judicial nature of PTO proceedings, Winstead's copying and submitting NPL to the PTO should be considered fair use, just as it would be if a Winstead attorney had submitted a copy to this Court in defending a client in a pending action, or as the undersigned lead counsel has done here – filing copies of the articles under seal.

### b.   The Transformative Nature of Submitting NPL Weighs Heavily in Favor of Fair Use

An analysis of the first fair-use factor also involves determining "whether the new work merely 'supersede[s] the objects' of the original creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578–79. The PTO Opinion expressly found that submissions of NPL are "transformative," finding that they "document, solely for purposes of patent examination/prosecution, that certain features of the applicants' claims are already in the prior art, or are obvious in view of the prior art." *Id.* at 3-6.

---

[10] *See Bond v. Blum*, 317 F.3d 385, 395 (4th Cir. 2003) (finding fair use in a child custody lawsuit where use of a copyrighted manuscript for its evidentiary value (admissions of a party) was "indifferent to [the authors'] mode of expression"); *Jartech, Inc. v. Clancy*, 666 F.2d 403, 406–07 (9th Cir. 1982) (finding that using copyrighted material as evidence in judicial proceedings is fair use, so long as the users do not reproduce work for its "intrinsic purpose"); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 (9th Cir. 1992) ("[U]se of copyrighted documents for preparation of expert testimony in court case was fair use."); *Berkla v. Corel Corp.*, 66 F. Supp. 2d 1129, 1133 n.3 (E.D. Cal. 1999) (finding court's own use of the visual reproductions at issue, including attaching them as an appendix to the opinion, was fair use); *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 634–42 (E.D. Pa. 2007) (finding fair use by the defendant law firm, which had reproduced copies of the plaintiff's website for purpose of defending its client in litigation).

Courts have often found transformative use "where the defendant uses a copyrighted work in a different context to serve a different function than the original." *Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 541 (S.D.N.Y. 2008) (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007)).   For example, in *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009), the Fourth Circuit found that a database of copyrighted documents that was created for the purpose of detecting plagiarism was transformative, even though the documents were copied in their entirety.   The court reasoned that a work "can be transformative in function or purpose without adding to" or altering the original work.   *See also Perfect 10*, 508 F.3d at 1167 (use of thumbnails for indexing webpages transformative); *Bill Graham Archives v. Dorling Kindersley Ltd.* 448 F.3d 605, 609–12 (2d Cir. 2006) (use of copies of Grateful Dead posters in a biographical work about the Grateful Dead was transformative).

Winstead's submissions to the PTO were for a purpose entirely different than that for which the articles at issue were created.   Winstead's alleged use was solely to disclose the articles to the PTO, thereby educating the PTO about the content of the prior art.   Once the content of the prior art is shown during patent prosecution, the patent attorney and the PTO patent examiner usually exchange comments and argument about the prior art and its effect, if any, in determining whether the applicant is entitled to the patent sought.   The patent attorney often criticizes the prior art in arguing for the grant of the patent.   Thus, the articles serve an evidentiary function in PTO proceedings and are used for "comment" and "criticism" – purposes quite different from that served by publishing the articles for academic purposes.

c.     **Submitting NPL Is Not a "Commercial Use" or "Exploitation" and Thus Is Fair Use**

The PTO Opinion expressly found that although the applicant or law firm disclosing prior art might be a for-profit entity, the submission to the PTO is not a "commercial use" or "exploiting" the copyrighted work because such disclosure is made pursuant to a legal requirement based on its factual, rather than expressive, content. *Id.* at 6.  The Court can take judicial notice of the factual nature of the two articles in question – each of which includes little, if any, expression.[11]

Plaintiffs may assert that Winstead's use of the journal articles is not fair use because it allegedly benefits Winstead commercially. But the commercial nature of a use is not decisive. *Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1175 (5th Cir. 1980). Moreover, in view of the quasi-judicial context and transformative use of the articles, factors like commercialism are less important in determining the first fair use factor. *See Acuff-Rose*, 510 U.S. at 579.

Lawyers submit articles to the PTO not to profit from such copying, but "because the applicant is required by law to submit the prior art to the [PTO]." PTO Opinion at 6. The PTO requires each individual involved in filing a patent application to submit all NPL that might be "material to patentability." *See* 37 C.F.R. § 1.56(a).

---

[11] The articles, identified on Schedule A of Plaintiffs' Original Complaint ("Complaint"), but not attached as required by Form 19 of the Federal Rules of Civil Procedure, allegedly include three pages from Kong *et al.*, "Chemical profiling of single nanotubes: Intramolecular p-n-p junctions and on-tube single-electron transistors," APPLIED PHYSICS LETTERS, vol. 80, Number 1, pp. 73-75 (2002), Certificate of Copyright Registration TX-5-494-318, effective Jan. 7, 2002; and eight pages from J. Li, *et al.*, "Enhanced germicidal effects of pulsed UV-LED irradiation on biofilms," JOURNAL OF APPLIED MICROBIOLOGY, vol. 109, Issue 6, pp. 2183-90 (2010), Certificate of Copyright Registration TX-7-279-489, effective Dec. 15, 2010. Copies of the two articles in question, filed under seal as APP. Ex. 6 and APP. Ex. 7, respectively, were obtained by the undersigned lead counsel for a fee from publicly-available sources. Winstead respectfully requests the Court to take judicial notice of APP. Ex. 6 and APP. 7 under FED. R. EVID. 201. The Court can take judicial notice that neither article is a fun read, has little or no creative or expressive content, and was submitted to the PTO under a legal duty for its evidentiary value and factual reporting, commentary, and criticism about the state of the relevant prior art which must be disclosed to the PTO under controlling laws and standards of conduct governing lawyers and others practicing before the PTO.

Thus, it is clear that there is fair use under the first factor because: (1) the use of copyrighted articles in a quasi-judicial PTO proceeding should be fair use to the same extent as in judicial proceedings and is thus fair; (2) the submission of the articles to the PTO is "transformative" and not "commercial use" or "exploitation;" and (3) the submissions to the PTO were made pursuant to Winstead's legal duty to disclose all materials relevant to patentability.

### 2. The Factual and Evidentiary Nature of the Published Articles Also Supports Finding Fair Use

The second factor, "the nature of the copyrighted work," also supports finding fair use here. Under this factor, factual works enjoy less protection than expressive works, and published works receive less protection than unpublished works. *Acuff-Rose*, 510 U.S. at 586. "For instance, works of pure creative expression such as songs or poems or novels come closer to the core of intended copyright protection than works containing primarily factual elements such as biographies, historical essays or almanacs." *DSC Comm'ns Corp. v. DGI Techs., Inc.*, 898 F.Supp. 1183, 1190 (N.D. Tex. 1995). "The Copyright Act does not protect the factual or functional aspects of a copyrighted work and a work's functional or factual aspects may be copied without offending the Copyright Act." *Id.*

The two articles at issue are both scientific, non-fiction works submitted to the PTO for their factual, rather than expressive, content. Indeed, it was solely their factual content as prior art that made them relevant to the PTO's proceedings. Further, the two articles are published works and do not raise the special concerns associated with unpublished works under the second factor. *See Harper & Row Publishers., Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985) ("[T]he unpublished nature of a work is '[a] key, though not necessarily determinative, factor' tending to

negate a defense of fair use.") (quoting S. Rep. No. 94-473, at 64 (1975)).  The second factor

therefore supports finding fair use.

### 3.    The Amount and Substantiality of Copying Is Neutral

The third fair-use factor, "the amount and substantiality of the portion used in relation to

the copyrighted work as a whole," is neutral in this case.  In *Acuff-Rose*, the Supreme Court

recognized that the third factor "harken[s] back to the first of the statutory factors, for . . . the

extent of permissible copying varies with the purpose and character of the use."  510 U.S. 569,

586 (1994) (citing *Sony Corp. of Am. v. Universal Studios, Inc.*, 464 U.S. 417, 449–50 (1984).

Although fair use is more likely when only a portion of the work has been copied, "[i]n some

instances, copying a work wholesale has been held to be fair use . . . ." *Maxtone-Graham v.

Burtschaell*, 803 F.2d 1253, 1263 (2d Cir. 1986); *see also Sony*, 464 U.S. at 450 (copying of

entire television programs for private time-shifting is fair use); *Field v. Google Inc.*, 412 F. Supp.

2d 1106, 1117–23 (D. Nev. 2006) (Google's creation and maintenance of cached copy of fifty-

one complete works is fair use).

As the PTO Opinion explains, the context of the use at issue supports a broad standard of

permissible copying as fair use.  Often, as in this case, the entire prior art articles are material to

patentability.  *See* PTO Opinion, APP. Ex. 5 at 4, ("[C]opying less than the entire work is often

not an option for purposes of imparting the necessary information to patent applicants.").  Given

the potentially severe penalties for failing to disclose any portion of these articles later deemed

relevant in hindsight, prudent practice typically requires copying and submitting entire articles,

not just excerpts.  Indeed, the articles here are quite brief: one is three pages and the other eight

pages.  Given the legal duty to make such submissions, the quasi-judicial nature of PTO

proceedings, and the potentially severe penalties for under-disclosure, Winstead's alleged

copying and submitting entire articles is neutral and does not affect the fair-use analysis.

### 4. Winstead's Alleged Actions Had No Effect on the Market Value for the Articles

The fourth factor, often considered to be the most decisive factor, considers the effect of the use on the market value of the copyrighted work. *Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1177 (5th Cir. 1980). As the PTO Opinion found, there is no basis for concluding that an applicant's submission of NPL has any significant impact on the potential market for that material. Most NPL submitted during patent prosecution typically is published years before the submission to the PTO, and, by the time the PTO considers the article, has "only limited commercial value." PTO Opinion, App. Ex. 5 at 5. Moreover, the PTO prevents any systematic infringement of NPL; it cannot be downloaded from the PTO's website, although anyone can obtain a copy of the NPL for a fee as part of the PTO's complete file.

Finally, the copies of NPL that lawyers submit to the PTO typically have been obtained through licensed databases, and thus have already been paid for once. *See id.* at 6. Because Winstead's alleged use does not adversely affect the commercial value for the articles at issue, the fourth factor also supports finding fair use.

As shown above, three of the four factors weigh heavily in favor of finding fair use and the third factor does not impact the analysis. Thus, the Court should conclude that Winstead's alleged copying and submission of the two articles in connection with its duty of disclosure is fair use – as a matter of law.

### D. Providing Non-Patent Literature to the PTO Is Not a "Public" "Distribution" Protected by Copyright Law, Regardless of the Fair-Use Analysis

Section 106(3) of the Copyright Act protects against only "public" distributions. 17 U.S.C. § 106(3). Section 106(3) provides that the copyright owner has the exclusive right "to *distribute copies . . . to the public* by sale or other transfer of ownership, or by rental, lease, or

lending . . . ." *Id.* (emphasis added).  As the Second Circuit has noted, a transfer only to one or a

few persons should not infringe the public distribution right, since finding infringement in such a

case would divest the phrase "to the public" of all meaning.  *Cartoon Network LP, LLLP v. CSC*

*Holdings, Inc.*, 536 F.3d 121, 139 (2d Cir. 2008) (citing 2 NIMMER ON COPYRIGHT, § 8.11[a], at

8-149 (2007)).

According to Nimmer, the right of public distribution is generally interchangeable with

the older right of publication, 2 NIMMER ON COPYRIGHT, § 8.11[B][2][c], at 8-154 (2011), and

the touchstone of publication is "the availability of a work to the general public." *Id.* §-

8.11[B][2][b], at 8-154 (citing William S. Strauss, Copyright Office, *Protection of Unpublished*

*Works*, at 9019 (1957) (Study No. 29)).  Similarly, in *Arista Records LLC v. Greubel*, the court

agreed that "the right of distribution also has been identified as synonymous with the publication

of a copyrighted work." 453 F. Supp. 2d 961, 969 (N.D. Tex. 2006) (citing *Harper & Row*

*Publs., Inc. v. Nation Enters*, 471 U.S. 539, 552 (1985)).  Hence, a patent attorney does not

***publicly distribute*** a work – and thus does not infringe – when submitting a copy of a prior art

reference to the PTO pursuant to the duty of disclosure.[12]

E.   **Submitting Non-Patent Literature to the PTO is Not Actionable Under the**
     ***Noerr-Pennington* Doctrine**

Finally, although a matter of first impression, the *Noerr-Pennington* doctrine protects

lawyers' right to petition the government by submitting NPL in connection with filing and

prosecuting a patent application.  Petitioning includes "efforts to obtain judicial and quasi-

judicial actions." *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 294 (5th Cir. 2000)

(citation omitted).  The patent application process is a quasi-judicial proceeding in which a party

petitions the government to take action. *See Markman v. Westview Instruments*, 52 F.3d 967,

---

[12] Even if the submission of a copy to the PTO is somehow a public distribution under Section 106(3) (which
Winstead denies), it nonetheless constitutes a fair use for the reasons previously explained.

986 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ("Patent applications, unlike contracts, are reviewed by patent examiners, quasi-judicial officials trained in the law."). The Fifth Circuit has applied the *Noerr-Pennington* doctrine to non-antitrust claims when doing so would be consistent with the purpose of the doctrine. *See Video Int'l. Prod., Inc.* v. *Warner-Amex Cable Comm.*, 858 F.2d 1075, 1084 (5th Cir. 1988) (noting that the doctrine should protect persons from liability arising from petitioning the government).

The Fifth Circuit has noted that in terms of protections afforded, the *Noerr-Pennington* doctrine is not coextensive with the First Amendment, and indeed in some cases exceeds it. *See Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358 (5th Cir. 1983) ("We reject that notion that petitioning immunity extends only so far as the first amendment right to petition and then ends abruptly."); *see also Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 890 (10th Cir. 2000) ("The Fifth Circuit specifically noted that its use of the term 'petitioning immunity' went *beyond* the guarantees of the petition clause.") (emphasis in original).

Thus, beyond Winstead's clearly-established fair-use defense, submitting NPL to the PTO is not actionable under the *Noerr-Pennington* doctrine.

### III.   LAWYERS HAVE A PROTECTED FAIR-USE RIGHT AND LEGAL DUTY TO KEEP CLIENT-FILE COPIES OF ANY COPYRIGHTED ARTICLES SUBMITTED TO THE PTO, BUT IN ANY EVENT, SUCH COPIES ARE NOT AN ACTIONABLE PUBLIC DISTRIBUTION UNDER 17 U.S.C. § 106(3), AS A MATTER OF LAW

Plaintiffs likewise fail to state a copyright infringement claim (Complaint ¶¶ 15, 18) against Winstead for allegedly keeping client-file copies of any copyrighted NPL articles submitted to the PTO – which lawyers have a protected fair-use right and legal duty to their clients to do and which, in any event, is not a public distribution under 17 U.S.C. § 106(3), as a matter of law. No court has held otherwise.

The fair-use analysis for copying and retaining NPL articles in client files is essentially the same as the analysis for copying and submitting such documents to the PTO.

### A.      Lawyers Have A Legal Duty to Maintain Client Files, Including Copies of Submissions to the PTO

Lawyers have both a duty to submit NPL to the PTO and a duty under both state and federal law to keep clients' property. Lawyers' files are the client's property. *See Resolution Trust Co. v. H__, P.C.*, 128 F.R.D. 647 (N.D. Tex. 1989). Rule 1.14(a) of the Texas Disciplinary Rules requires that a client's property, which includes a client's file, "shall be identified as such and appropriately safeguarded." TEX. DISCIPLINARY R. OF PROFESSIONAL CONDUCT 1.14(a); *accord* 37 CFR § 10.112(c). In addition, "complete records [of this property] shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation. *Id.*

An Informal Opinion from the ABA Ethics Committee advises that "[a] lawyer should use care not to destroy or discard information that the lawyer knows or should know may still be necessary or useful in the assertion or defense of the client's position in a matter for which the applicable statutory limitations period has not expired." ABA Informal Opinion 1384 (1977); *see also* RESTATEMENT (Third) LAW GOVERNING LAWYERS § 46, cmt. b (lawyer's duty to safeguard client documents).

The PTO's MPEP, which elaborates and explains the rules for practice before the PTO, requires that any correspondence with the PTO that contains a person's signature must either be an original or a copy. PTO, MANUAL OF PATENT EXAMINING PROCEDURE, Forward (8th ed. 2010). If the correspondence is a copy of an original, a patentee must "retain [the original file] as evidence of authenticity" in case the PTO "may require submission of the original." 37 C.F.R § 1.4(d)(1)(ii). An IDS filed by a patent attorney requires a signature and constitutes

correspondence with the PTO.  *Id.* § 10.18(a) (each paper filed by a patent attorney or agent "must bear a signature…."), § 1.4(a)(2) ("Correspondence with the Patent and Trademark Office comprises: . . . [c]orrespondence in and relating to a particular [patent] application or other proceeding in the Office.").  Under the PTO's rules, a patent attorney thus has a duty to maintain a copy of the IDS (including any NPL) submitted to the PTO.

The MPEP also instructs that a patent attorney should keep track of information considered, but not submitted to the PTO in order to guard against hindsight attacks based on the non-disclosure of such information.  *See* MPEP § 2004 ("Aids to Compliance with Duty of Disclosure").  Moreover, prudent practice means that a patent attorney should maintain copies of *all* art in the client file, both submitted and unsubmitted.  This practice allows the attorney to establish later (if necessary) that any unsubmitted art was immaterial or irrelevant to the patent application, especially in light of the art that was submitted to the PTO.

In this context, copying and retaining copies of the two articles is transformative because Winstead is not using the articles for their original purpose, but for the sole purpose of representing its clients before the PTO and complying with the duty of disclosure.  Lawyers have an ethical duty to preserve evidence and maintain adequate records of prior art for future reference during patent prosecution.

Patent attorneys like Winstead cannot fulfill their ethical duties to represent their clients without keeping copies of the prior art submitted to the PTO.  A patent attorney must be able to criticize and distinguish the client's invention from the prior art in exchanges with the PTO.  A patent attorney could not do this without reference to the prior art and still competently represent the client.  *See* Tex. Disciplinary R. of Professional Conduct, Rule 1.01, cmt. 1 (explaining

the importance of continuing study of both facts and law throughout the course of representation).

Even after a patent is granted, properly maintained client files remain important. As the MPEP notes, such files may help defend the patent (and the attorney) from later attacks. *See* MPEP § 2004. In addition, properly maintained client files are important for additional reasons, including evidentiary considerations.[13] Keeping copies of prior art in the client file is therefore important to ensuring the proper representation of Winstead's clients before the PTO.

### 1.    The Purpose and Character of the Use for the Client File Supports Finding Fair Use

The analysis of the first factor, the purpose and character of the use, again supports finding fair use – as a matter of law. *See* Section II.C.1, *supra.*

### 2.    The Factual and Evidentiary Nature of the Published Articles Supports Finding Fair Use

The second factor, "the nature of the copyrighted work," also favors finding fair use because the two articles are both scientific, non-fiction published works that are used for their factual, rather than expressive, content. *See* Section II.C.2, *supra.*

### 3.    The Amount and Substantiality of Copying Is Neutral

The third factor, the "amount and substantiality" of the copying, is neutral in the fair-use analysis. In *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, the court discussed how the question of whether the defendant law firm had copied more than was necessary and justifiable under the third factor was "not a quantitative determination, but rather a qualitative one." 497 F. Supp. 2d 627, 638 (E.D. Pa. 2007) (citations omitted); *see also Harper*

---

[13] *See* APP. EX. 8, Donna M. Praiss, *Creating a Winning Patent Portfolio*, NATURE BIOTECHNOLOGY (2001), *available at* http://www.nature.com/nbt/journal/v19/n6s/box/nbt0601supp_BE5_BX1_.html (last accessed May 31, 2012) (keeping proper patent records allows companies to "support the company's priority of invention over another's in an interference proceeding or to invalidate a patent of another"). Winstead respectfully requests the Court to take judicial notice of APP. EX. 8 under FED. R. EVID. 201.

& *Row Publishers,* 471 U.S. at 564–65.  Even though the defendant law firm there had duplicated the copyrighted webpages in their entirety, the court reasoned that it was necessary to do so because ". . . the material was relevant evidence in the Underlying Litigation, and the firm had a duty to preserve relevant evidence." *Id.*  The only way the law firm could fulfill that duty was by making and keeping copies.  Essentially the same considerations apply here.

For the same reasons set forth in Section II.C.3, *supra*, keeping a client-file copy of material submitted to the PTO is not a "commercial use" or "exploitation" and thus is fair use.

### 4.   Winstead's Alleged Actions Had No Effect on the Market Value for the Articles

The analysis of the fourth factor, impact on the market value, is nearly identical to the analysis for submitting articles to the PTO.  A client-file copy of material submitted to the PTO is not a "commercial use" or "exploitation" and thus is fair use.  *See* Section II.C.4, *supra*.

Although NPL is often copied in its entirety, the copies typically sit in the client file, just in case they are needed later.  Winstead has no intention of distributing the client file to the general public, and indeed cannot do so in light of its duty to maintain client confidences and secrets. 37 CFR § 10.57 (duty to preserve confidences and secrets of client); TEX. DISCIPLINARY R. OF PROFESSIONAL CONDUCT 1.05 (duty to maintain confidentiality of client information). There is no basis for concluding that Winstead's alleged limited copying and keeping articles in its client files has any impact on the market value for the articles at issue.

### B.   Allegedly Keeping Copies of any Articles in Client Files Is Not a "Public" "Distribution" Protected by Copyright Law, Regardless of the Fair-Use Analysis

Finally, allegedly keeping copies of any articles in client files is not actionable – as a matter of law – because only ***public*** distributions fall within the exclusive rights of a copyright owner under the Copyright Act, 17 U.S.C. § 106(3).  As a matter of law, having NPL in a PTO

or law firm client file is not an actionable distribution, so Winstead cannot be liable for infringement regardless of any analysis of the four fair-use factors.

## IV.   PLAINTIFFS' UNSUPPORTED THEORY OF COPYRIGHT LIABILITY WILL HARM THE PATENT AND JUDICIAL SYSTEMS

Given the duty to disclose relevant prior art (whether or not copyrighted) to the PTO,  the absence of a fair-use defense would force all patent attorneys to: (1) locate all copyright owners of each prior art article to be submitted to the PTO for each patent application they handle, and (2) once the correct copyright owner is found, obtain permission from each such copyright owner.    Because different persons can own the exclusive rights in a copyright,[14] even determining the correct person from whom to obtain permission can be an expensive or impossible chore.[15]   Absent a fair-use defense, patent attorneys (and their clients) will thus face greater costs in connection with patent prosecution.

These are not speculative or minor costs.  In 2011 alone, the PTO received over half a million patent applications and granted 247,713 patents.[16]   In 2011, the average patent cited 42 prior art references.[17]   Although the median patent application cited 17 references, about 8% of

---

[14] A copyright owner has exclusive rights, including the rights to: (1) reproduce the copyrighted work; (2) prepare derivative works based upon the work; (3) distribute copies of the work to the public; (4) perform the copyrighted work publicly; and (5) display the copyrighted work publicly.  17 U.S.C. § 106.  Each of these exclusive rights can be transferred, in whole or in part, by sale or by license.  *See* 17 U.S.C. § 201(d)(2).  For example, an author may transfer the right to make and distribute paper copies, but keep the right to make and distribute electronic copies.

[15] A search of the Copyright Office website shows that one of the two articles at issue is owned by someone other than Plaintiff Blackwell.  *See* note 1, *supra*.  Thus, even a diligent patent lawyer would not be able to easily identify Plaintiff Blackwell as the copyright owner.  If Blackwell is not the copyright owner, Plaintiffs' failure to identify the true owner likewise shows the difficulty of this task.

[16] *See* APP. EX. 9, PTO, *U.S. Patent Statistics Chart Calendar Years 1963 – 2011*, *available at* http://www.uspto.gov/web/offices/ac/ido/oeip/taf/us_stat.htm (last accessed May 31, 2012) of which Winstead respectfully requests the Court to take judicial notice under FED. R. EVID. 201.

[17] *See* APP. EX. 10, Patently-O Blog, *Average Number of References Cited Per Patent* (July 22, 2011), *available at* http://www.patentlyo.com/patent/2011/07/average-number-of-references-cited-per-patent.html (last accessed May 31, 2012) of which Winstead respectfully requests the Court to take judicial notice under FED. R. EVID. 201.

patents cite more than 100 references.[18]  Given the magnitude of these numbers, it is clear that

sustaining Plaintiffs' unsupported theory of copyright liability would result in a substantial

increase in the cost of seeking patent protection.   Such a result is contrary to the goals of the

recent *Leahy-Smith America Invents Act* of 2011, which was intended to *help* small inventors by

*decreasing* their fees for filing a patent application by 50% –75%.  *See* H.R. 1249 § 10(b).  The

public interest should favor efficient and inexpensive prosecution of patents, including the

consideration of all relevant prior art, whether or not copyrighted.

Plaintiffs' unsupported theory of copyright liability would harm not just our patent

system, but also our judicial system.  The same non-resident counsel in this case have already

filed mirror-image copyright infringement suits against three law firms – including Winstead –

and their client John Wiley & Sons has sued yet another law firm, using the same boilerplate

complaint that is virtually indistinguishable as to each law firm and is universally deficient.[19]

Absent application of the fair use doctrine, Plaintiffs would have every incentive to sue

every law firm that ever prosecuted a patent and submitted an article that previously appeared in

one of Plaintiffs' publications.   In view of the number of patent applications and prior art

submissions made each year, it is easy to see that sustaining Plaintiffs' position would result in a

tsunami of copyright cases, some clearly without merit as here.

---

[18] *See* APP. EX. 11, Patently-O Blog, *USPTO Proposes to Modify Applicants Duty to Disclose, Following Therasense in Limiting the Scope of Materiality* (July 21, 2011), *available at* http://www.patentlyo.com/patent/2011/07/uspto-proposes-modification-of-the-duty-to-disclose-following-therasense-in-raising-the-materiality-standard.html (last accessed May 31, 2012) of which Winstead respectfully requests the Court to take judicial notice under FED. R. EVID. 201.

[19] *See* Complaints filed in at least three other states: APP. EX. 12, *American Institute of Physics v. Schwegman Lundberg & Woessner, P.A.*, No. 0:12-cv-00528 (D. Minn. Feb. 29, 2012);  APP. EX. 13, *John Wiley & Sons v. McDonnell Boehnen Hulbert & Berghoff*, No. 1:12-cv-01446 (N.D. Ill. Feb. 29, 2012) ;  APP. EX. 14, *John Wiley & Sons v. Hovey Williams LLP*, No. 5:12-cv-04041 (D. Kan. Apr. 20, 2012).   Winstead respectfully requests the Court to take judicial notice of APP. EX. 12-14 under FED. R. EVID. 201.   There likely are additional generic complaints filed against more law firms.

As a recent *ABA Journal* article noted, such mass litigation tactics by plaintiffs such as John Wiley & Sons have contributed to the dramatic increase of copyright cases pending in the federal courts from 6,000 cases in 2007 to over 100,000 cases as of February 2011.[20] Rejecting Plaintiffs' unsupported theory of copyright liability will have a dramatic and proper impact in deterring such tactics.

## V.   ALTERNATIVELY, THE COMPLAINT DOES NOT MEET MINIMAL PLEADING REQUIREMENTS AND MUST BE DISMISSED

Beyond the legal defects that require the Complaint to be dismissed, its contents do not meet even minimal pleading standards and demonstrate that Plaintiffs cannot prevail under any plausible set of facts.   In conceding that the sparse and conclusory allegations are based on nothing more than "information and belief" and require discovery as a fishing expedition to find a claim (Complaint ¶ 15), Plaintiffs have failed to plead sufficient facts beyond formulaic labels and conclusions that require dismissal. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). There are no exhibits, no details or dates about any patent applications (which would confirm certain alleged claims are time-barred), and no evidence of any diligence.   Apart from changing the caption and name of the defendant law firm and altering a few words in Complaint ¶¶ 13-14, the allegations against Winstead are indistinguishable from those against other firms, although different articles, unidentified patents, and conduct are at issue.   Even a cursory glance at the approved form of copyright infringement complaint – Form 19 attached to the Federal Rules of Civil Procedure[21] – shows that this Complaint does not meet minimal requirements and must be dismissed.

---

[20] *See* APP. EX. 15, Eric Gardner, *The Righthaven Experiment*, ABA JOURNAL 37–38 (May 2012). Winstead respectfully requests the Court to take judicial notice of APP. EX. 15 under FED. R. EVID. 201.

[21] *See* APP. EX. 16. Winstead respectfully requests the Court to take judicial notice of APP. EX. 16 under FED. R. EVID. 201.

## VI.   CONCLUSION

For the foregoing reasons, the Complaint must be dismissed with prejudice, and Winstead should recover its attorneys' fees and costs, as authorized by 17 U.S.C. § 505.

Respectfully submitted,


/s/ George M. Kryder
George M. Kryder
   State Bar No. 11742900
Steve R. Borgman
   State Bar No. 02670300
Janice Le Ta
   State Bar No. 24075138 (Pro hac vice application pending)
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX  75201-2975
Telephone: (214) 220-7700
Facsimile: (214) 220-7716

*Attorneys for Defendants Winstead PC and John Does 1-10*


## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing instrument was served upon counsel of record on this 1st day of June, 2012, through the CM/ECF system in accordance with the Federal Rules of Civil Procedure.

/s/ George M. Kryder
George M. Kryder


US 1414637v.5